NELLIE O'CONNOR *et al.*, Plaintiffs-Appellants, *v.* RONALD GREER *et al.*, Defendants-Appellees.—NELL ROSS *et al.*, Plaintiffs-Appellees, *v.* IVAN DEAN *et al.*, Defendants-Appellees. (NELLIE O'CONNOR *et al.*, Intervenors-Appellants.)

Third District   Nos. 76-434, 76-492 cons.

Opinion filed December 19, 1977.

S. David Simpson, of McLaughlin and Hattery, of Galesburg, for appellants.

William J. Scott, Attorney General, of Chicago, Richard E. Hart and C. Clark Germann, both of Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield, Carson D. Klitz, of Rushville, Burrel Barash, of Barash & Stoerzbach, of Galesburg, and Keith F. Scott, of Macomb (Gregory G. Lawton, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The parties here identified and designated plaintiffs, are the heirs of Mary Olive Woods. They appeal judgments consolidated on appeal which dismiss with prejudice a complaint for declaration of a resulting trust and deny plaintiffs' petition to intervene in a pending action seeking *cy pres* relief upon a trust. The appellees include the trustees of the Littleton Baptist Church (Littleton), the successors to the trustees appointed by the grantor of the trust (Trustees), the Illinois Baptist State Convention, a corporation (Baptist), and the Attorney General.

Each action is founded upon a trust created by Mary Woods in 1949, conveying 12 parcels of real estate to named trustees with provision for management and compensation and appointment of successor trustees.

The trust instrument reserved a life estate in the grantor. The essential portions of the trust deed relevant to the issues raised here are:

"5. PROVISION FOR LITTLETON BAPTIST CHURCH

It is directed that the trustees annually pay the Littleton Baptist Church of Littleton, Illinois or to the trustees of such church in honor of the following persons (naming parents and brothers and sisters) a sum equal to ten (10) per cent of the net annual income of the property herein described other than Tract #1, or property purchased in lieu thereof. It is directed, however, that not to exceed Five Hundred Dollars ($500.00) of any annual payment shall be used for the payment of any salary for any minister of said church which may be in addition to the ten per cent above provided.

6. AID FOR YOUTH OF LITTLETON BAPTIST CHURCH

I direct that any young man or young woman, a member of the Littleton Baptist Church who desires to train for the ministry or for church work other than ordained ministry shall be aided by the trustees herein named to such extent as they deem advisable. I also direct that the trustees shall give such aid as they deem advisable for the junior and senior choirs of said church."

Mary Woods executed a will in 1954 which, upon her death in 1956, was admitted to probate. The will disposed of real and personal property other than that provided in the trust deed.

The plaintiffs, as the heirs of Mary Woods, in 1957, filed a complaint designated Chancery 6159, seeking construction of the trust deed, construction of the will, partition and accounting. Parties-defendant in such action included the trustees, Littleton, and the Attorney General. The sum of the allegations is that except for the provisions of paragraph 5 of the trust deed, which provides 10 percent of the income to be paid to Littleton, the instrument does not designate the beneficiaries of the trust and such remain unascertainable; no purpose of the trust can be ascertained; the trust is dry and passive as to 90 percent of its income; provides for an unlawful accumulation and violates the rule against perpetuities. It is reiterated that paragraph 6 does not designate with sufficient certainty the beneficiaries of that provision and that such beneficiaries can not be ascertained or identified.

The complaint prayed that the trust be declared to be a valid trust for Littleton as to 10 per cent of Tracts #2 through #12, and that the plaintiffs be held to hold equitable title to such tracts. Tract #1 included in the conveyance to the trustees, provided that the residence of the grantor be maintained as a home for members of the grantor's family.

In September 1959, the court entered a decree finding that paragraph 4

(provision for the donor's residence, Tract #1), and paragraph 7 (providing for conveyance of trust property to any future theocratic government) were void and unenforceable but that the remaining provisions for Tracts #2 through #12 were under "a valid and existing trust." It was further found in the decree that by reason of the invalidity of paragraphs 4 and 7 of the trust, there was a resulting trust in and for the benefit of the heirs of the value of $100,000. The decree directed the sale of certain tracts to satisfy such interests. By reason of the changes in the trust corpus, the decree ordered that Littleton receive 12 percent of the trust income. It was further found and decreed that Mary Woods died intestate as to the real estate conveyed by the trust. The issues upon appeal are argued in the terms and context of that decree.

In May 1974, a petition filed in Chancery 6159, recited the death of the trustees named by the donor and prayed the appointment of the petitioner, Ronald Greer, as a relative of Mary Woods residing in the vicinity, to be successor trustee. Littleton filed an answer objecting to the appointment of Greer and "would recommend" the appointment of Marvin Caldwell, as successor trustee.

In July 1974, Baptist filed a petition to intervene alleging that it was a religious corporation of which Littleton was a member and further alleged that as to paragraph 6 the petitioner was informed that Littleton has no "young men or young women who are members of the Littleton Baptist Church" who desire to train in the ministry or other church work who have been aided by the trust, and that the aid given junior and senior choirs of Littleton had been minimal. It was further alleged that it was impossible, impractical or inexpedient to apply the approximately 82 percent of the net income provided in the trust deed as modified by the decree of the court, that such income should be applied in accordance with the general intent of Mary Woods to train young men or young women for the ministry or for other church work, and that the distribution of the surplus arising from 82 percent of the net income to educational and other programs of Baptist would effectuate such intent. Some 6 percent of income was allocated as fees to trustees and farm management.

The petition to intervene was allowed. On the same date the court appointed trustees *pendent lite*. They subsequently received permanent appointment.

In February 1975, the trustees filed a motion to dismiss the petition by Baptist to intervene, alleging that the petition for appointment of trustees had been granted and that there was no pending litigation. Littleton also thereafter filed a motion to dismiss Baptist's petition to intervene.

In September 1975, Littleton filed a "Motion for Approval of Additional Charitable Use," alleging that Littleton has approximately 70 members;

that few young members of the church have requested assistance under the provisions of paragraph 6 of the trust, and that the surplus of net income of the trust has grown to a sum in excess of $60,000 and that by reason of the circumstances it is not practical to carry out the charitable intent of the donor to assist persons in the Littleton area seeking a Christian education. Littleton prayed that the court apply the *cy pres* doctrine and direct the balance of the net income be used for establishing a church camp and recreation area in Littleton, to assist Littleton area students in attending Christian colleges and to assist the aged and needy of Littleton.

In January 1976, Baptist filed its complaint in intervention alleging the minimal use of 82 percent of the trust income for trust purposes, and seeking application of accumulated income through *cy pres* as alleged in its petition.

In January 1976, plaintiffs filed a complaint to construe the trust deed and for declaration of a resulting trust. Parties-defendant included the trustees, Littleton, the Attorney General and the unknown heirs of Mary Woods.

The complaint referred to and incorporated the pleadings to construe the trust in Chancery 6159, culminating in the decree of September 1959; recites the circumstances leading to the accumulation of income as were alleged by Littleton and Baptist and continued to allege that the trust deed made no provision for income remaining after satisfaction of the trust provision in paragraph 6 and that the decree of September 1959 made no provision for disposition of excess income; that it is impractical and inexpedient to apply the accumulated income for the purposes stated in paragraph 6 of the trust; that the excess accumulation is unlawful by reason of Illinois Revised Statutes 1973, chapter 30, paragraph 153, so that the excess income would be lost forever to Littleton. It was also alleged that the trust deed "did not reflect a general charitable intent" of the grantor, but a narrow intent and that by reason of such matters a resulting trust arises in favor of plaintiffs. The complaint prayed that the court declare the trust valid and enforceable where the donor directed disposition of the income to the extent practical and expedient.

In May 1976, the court denied the motions filed by the trustees and Littleton to dismiss the "Complaint in Intervention" filed by Baptist.

As to the complaint by plaintiffs, designated 76-CH-1, the trustees filed a motion to dismiss alleging that the decree of 1959 in Chancery 6159 found the provisions of paragraph 6 of the trust valid and enforceable; that such was a final adjudication on the merits and that the value of the interest of plaintiffs as heirs had been satisfied of record; that the action was barred as *res judicata* and that the plaintiffs had "no standing to attack the distribution of accumulation of income." A motion by Littleton to

dismiss alleged that the action was barred under the provisions of the Civil Practice Act, section 48, as judgment had been entered as to all matters and parties. The Attorney General filed a motion to dismiss, alleging that the action was barred by section 48 of the Civil Practice Act, that there was a prior judgment in the same cause of action and that such judgment had been satisfied of record and that in so far as the complaint requested the court's instruction in the administration of a charitable trust, the Attorney General was a proper party to protect the interests of the public.

Plaintiffs objected to such motion alleging that it was neither *res judicata* nor subject to collateral estoppel as the issues presented were based on facts not known at the time of the decree.

In May 1976, plaintiffs filed a petition to intervene in Chancery 6159, alleging that the pleadings of Baptist and Littleton invoking a *cy pres* in the use of the trust income:

> "* * * may adversely affect the interest of plaintiff-heirs and that the interest of the plaintiffs may be inadequately represented in the proceeding and plaintiffs bound by the decree of the court."

The accompanying complaint filed by plaintiffs alleged the fact of increased income to the trust and the inadequate use of such income for the purposes of paragraph 6; that the trust grantor made no provision of excess income and that the decree of the court in September 1959, made no provision therefore. It was further alleged that the trust deed did not reflect a general charitable intent "but a narrow intent to benefit the membership of a particular church," and that by reason of the incomplete disposition of trust income the trust deed created a resulting trust in the plaintiffs. The complaint prayed that the court construe and interpret the trust deed in the light of the changing circumstances as alleged; declare that it is not practical or expedient to apply the surplus income to the purposes set forth in paragraph 6 so that the deed does not completely dispose of or make provision for the excess income; that the court determine that the trust deed did not reflect a general charitable intent and declare a resulting trust as to the excess income not disposed of by said deed for the benefit of the plaintiff-heirs.

The Attorney General filed a motion to dismiss the plaintiffs' petition to intervene alleging that the decree of September 1959, was *res judicata*; that plaintiffs' complaint in Chancery 76-CH-1 had been dismissed under the provisions of section 48 of the Civil Practice Act; that the plaintiffs had no constitutional or legal right to intervene; and that as a matter of law the plaintiffs could not be adversely affected by the decree.

The trustees filed a motion to dismiss alleging that the trust had been found to be valid and enforceable as to the issues presented; that there had been a final adjudication on the merits and plaintiffs' interests satisfied

of record, and that plaintiffs could not intervene under provisions of section 26.1 of the Civil Practice Act since their rights had been adjudicated.

On June 1, 1976, the trial court dismissed plaintiffs' complaint with prejudice, finding that there had been a judgment in bar of the action which was *res judicata* and that the claim of plaintiffs had been satisfied of record. The court further found that the plaintiffs had no standing to sue as the trust had been declared to be a valid charitable trust.

In July 1976, the court denied plaintiffs' petition to intervene finding that the plaintiffs' interests had been adjudicated and satisfied by the decree of September 1959; that the decree of that date was *res judicata* as to the rights and interests of the plaintiffs so that they had no right to intervene under the Civil Practice Act, section 26.1.

The briefs of Baptist request that this court determine that a "general charitable intent" was created by the trust donor and that the doctrine of *cy pres* should be applied. This issue has not been passed upon or determined by the trial court in the proceedings which continue to pend as Baptist's petition to intervene. The decree of September 1959, in Chancery 6159, determined only that the trust deed:

> "* * * creates a valid and existing trust upon all of the real estate therein described save and except that real estate described in Tract #1 therein and save and except those parts thereof designated Paragraphs 4 and 7."

That decree did determine:

> "* * * that the settlor, Mary Olive Woods, evidenced no general charitable intent in Paragraphs 4 and 7 of the Trust Deed or any of them."

Upon an examination of the record it cannot be said that the issue of general charitable intent was presented to the court as to those portions found valid and enforceable. The complaint did not so allege. No other pleading so alleged. Logically, a determination of "no general charitable intent" as to void provisions, paragraphs 4 and 7, cannot be elevated into a finding of a general charitable intent in provisions of a decree finding that the remaining provisions, without more, were valid and enforceable.

The decree of September 1959, did determine that Mary Woods died intestate as to that property which was conveyed in trust. That decree also determined that the plaintiffs had an interest arising by a resulting trust in property as to those portions of the trust which were void and unenforceable.

The issues argued here are whether or not the decree in 1959 bars plaintiffs from any or all further interest or claim in the trust corpus arising by reason of facts which subsequent to the decree lead to a partial failure of the trust purpose.

The intended beneficiaries of the trust in Paragraph 6 were the class of young members of the Littleton Baptist Church who sought to be ordained and pursue church work. The complaint of plaintiffs (76-CH-1) and the petition to intervene (Chancery 6159), allege and reiterate the allegations in the pleadings of Baptist and Littleton that the income allocated to the young members of Littleton Baptist Church is not being used, that the income is being accumulated and that it is impractial and inexpedient to use the income for the stated purpose. The pleading and briefs of the trustees do not deny such facts. The answer of the Attorney General to the motion of Littleton for additional uses neither admits nor denies the allegations.

Section 400 of the Restatement (Second) of Trusts (1959) directed to charitable trusts provides:

> "If property is given upon trust to be applied to a particular charitable purpose, and the purpose is fully accomplished without exhausting the trust property, and *if the settlor manifested a more general intention* to devote the whole of the trust property to charitable purposes, there will not be a resulting trust of the surplus, but the court will direct the application of the surplus to some charitable purpose which falls within the general charitable intention of the settlor." (Emphasis supplied.)

Comment b states:

> "*Where settlor had no general charitable intention.* If property is given upon trust to be applied to a particular charitable purpose, and the purpose is fully accomplished without exhausting the trust property, and the settlor did not manifest a more general charitable intention to devote the whole of the trust property to charitable purposes, there will be a resulting trust of the surplus."

Section 432 is directed to resulting trusts arising from a surplus in a charitable trust:

> "Where the owner of property gratuitously transfers it upon trust for a charitable purpose which is fully performed without exhausting the trust estate, the trustee holds the surplus upon a resulting trust for the transferor or his estate, unless
>
> > (a) the doctrine of cy pres is applicable, or
> > (b) the transferor properly manifested an intention that no resulting trust of the surplus should arise."

Comment a includes the language:

> "[I]f the settlor manifested an intention to restrict his gift to the particular charitable purpose designated, and the purpose is fully accomplished without exhausting the trust estate, the trustee holds the surplus upon a resulting trust for the settlor or his estate."

*In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 389, 359 N.E.2d 109, the court said:

> "It is generally held that if a bequest to a particular charitable entity cannot be carried out and does not manifest a general charitable intent, the doctrine of cy pres is not applied. (Bogert, Trusts and Trustees sec. 436 (2d ed. 1964).) * * * The will contains no provision for the disposition of the remainder of the estate in the event of the failure of the charitable bequest. If the bequest should fail, the property would pass to the heirs as intestate property. * * *"

In that case the court found an express intent to disinherit the heirs. Here, the decree of September 1959, determined that the heirs did take intestate property where the trust failed in part.

In *Bland v. Lowery* (1976), 43 Ill. App. 3d 413, 356 N.E.2d 1318, *appeal denied* (1977), 65 Ill. 2d 580, the court said:

> "*Res judicata* will provide a complete bar to a second action, both as to matters actually adjudicated in the first action and to those matters which could have been raised therein, if there is, as between the actions, an identity of parties, of subject matter and of the cause of action. (*Forman v. Martin* (2d Dist. 1975), 26 Ill. App. 3d 1028, 325 N.E.2d 378.) For the doctrine of *res judicata* to operate, an initial judgment between the parties must be determinative in the sense that it is a decision as to the respective rights and disabilities of the parties based on ultimate facts or state of facts *disclosed by the pleadings*, as in this case, or evidence, if there is a trial, on which the right of recovery depends, * * *." (Emphasis supplied.) 43 Ill. App. 3d 413, 415, 356 N.E.2d 1318, 1320.

In *Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 276 N.E.2d 131, *appeal denied* (1972), 49 Ill. 2d 576, the court said:

> "Where facts are alleged in a second complaint which arose after the termination of the prior litigation and the issue in the second litigation thus differs from the first, the former adjudication is not a bar to the maintenance of the second suit. [Citation]." 2 Ill. App. 3d 102, 104-05, 276 N.E.2d 131, 133.

In the context of *Lowery*, the initial pleadings in Chancery 6159 did not allege the then present fact of excess income which could not be used for the purposes of the trust and the record shows no evidence of such fact. It is true that the complaint alleged a passive and dry trust and that it would provide for accumulation of income. Such facts were presented to the trial court, however, in terms of the allegations that the young men or young women, members of Littleton Baptist Church, were not identified and could not be ascertained to receive the trust benefits. Nothing in the

pleading or decree suggests that the court made a determination founded upon a present fact of excess accumulated income as is here raised as an issue. The initial decree determined no more than that there were persons who could be ascertained for purposes of administering paragraph 6, and that under such circumstances the trust did not provide for accumulation.

■■ Upon the same considerations of the record there can be neither *res judicata* or collateral estoppel by judgment determining the interests of the plaintiffs upon such facts. We have noted heretofore that the issue of the existence of a general charitable intent was not determined in the initial decree in so far as the court considered the matter of intent. It determined that there was no general charitable intent as to paragraphs 4 and 7. The matter of general charitable intent was not presented upon the remaining terms of the trust document. For such reasons the arguments of the several appellees that the interest of plaintiffs has not been determined and satisfied of record are not persuasive.

■■ The argument that plaintiffs have "no standing" to either sue or intervene appears to be founded upon a premise that the interests of plaintiffs as presently alleged were determined in the decree of September 1959, and have been satisfied. We are persuaded that the premise is not supported by the record.

Section 26.1 of the Civil Practice Act provides:

> "(1) Upon timely application anyone shall be permitted as of right to intervene in an action: * * * (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action; * * *." Ill. Rev. Stat. 1975, ch. 110, par. 26.1.

■■ Upon consideration of the record and the law as stated in *Tomlinson* and the Restatement (Second) of Trusts, we conclude that under the provisions of section 26.1(1)(b), the plaintiffs have an interest for purposes of intervening in Chancery 6159. For the same reasons we determine that it was error for the trial court to dismiss the complaint with prejudice in cause 76-CH-1.

The judgment of dismissal entered in cause 76-CH-1 and the order denying plaintiffs' petition to intervene in Chancery 6159 are reversed and the causes are remanded for further proceedings not inconsistent with the views expressed.

Reversed and remanded.

GREEN and MILLS, JJ., concur.